# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRITTON THOMAS,<br><br>*on behalf of himself and those similarly situated,*<br><br>         Plaintiff,<br>   v.<br><br>JOHN A. YOUDERIAN JR., LLC; JOHN A. YOUDERIAN JR. AND JOHN DOES 1 TO 10,<br><br>         Defendants. | Civ. No. 2:16-CV-01408-KM-MAH<br><br>**OPINION** |

Plaintiff Britton Thomas ("Thomas") brings a putative class action based on a statement in a debt collection letter he received (the "Letter") advising that if Thomas took the option of paying the reported debt by credit card, a $3.00 convenience fee (the "Convenience Fee") would be added. Thomas contends the Convenience Fee is neither authorized by contract nor permitted by law, and therefore the Letter contains false, deceptive, and misleading language, violating provisions of the Fair Debt Collections Practice Act (the "FDCPA"), 15 U.S.C. §§ 1692e, 1692f, and 1692g. The defendants, the alleged debt collectors who sent the Letter, move to dismiss Thomas's amended complaint for lack of standing and for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

Because I find that Thomas has standing and that he has adequately stated claims under 15 U.S.C. §§ 1692e, 1692e(2), 1692e(10), 1692f, and 1692f(1), I will deny the defendants' motion to dismiss as to those claims. I will grant the defendants' motion to dismiss, however, with respect to Thomas's claims alleging violations of 15 U.S.C. §§ 1692e(5) and 1692g(a)(1) for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6).

1

**Background**

Thomas alleges defendant John A. Youderian Jr., an attorney, and his debt collection business, defendant John A. Youderian Jr., LLC (collectively, "Youderian"), engage in debt collection for individuals' past-due or defaulted debts "incurred primarily for personal, family or household purposes." (AC ¶¶ 5–7, 10–11)[1] According to Thomas, Youderian uses mail, telephone, the internet, and other means of interstate commerce for debt collection efforts. (*Id.* ¶ 13)

Thomas alleges the Letter, dated March 12, 2015, was the first written communication he received from Youderian. That Letter reports that Thomas owes $327.80 to Allergy Consultants PA—Thomas's original creditor, which assigned Thomas's past-due account to Youderian for collection. (*Id.* ¶¶ 17–27, Ex. A) Two payment options are offered. The first option is to pay by mailing a check or money order. The second option is to pay by credit card.

The Letter states, in part: "You may pay by credit card by filling out the bottom portion of this letter and sending it to our office or by calling us at (856)376-[XXXX] . . . . If you pay by check or money order, your check or money order should be made out to 'John A. Youderian Jr. Esq.' and sent to the address at the top of this page." (*Id.* ¶ 28, Ex. A). The bottom portion of the Letter is essentially a removable coupon, which can be cut off and returned

---

[1]     For purposes of this opinion, citations to the record will hereinafter be abbreviated as follows:

- "AC" – Amended Complaint, ECF no. 9
- "Br." – Brief in Support of Defendants John A. Youderian, Jr., LLC and John A Youderian, Jr.'s Motion to Dismiss the Plaintiff's First Amended Complaint, ECF no. 12-1
- "Opp." – Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss, ECF no. 14 John A. Youderian, Jr., LLC and John A. Youderian, Jr.'s Motion to Dismiss the Plaintiff's First Amended Complaint
- "Reply" – Reply Brief in Further Support of Defendants John A. Youderian, Jr., LLC and John A. Youderian, Jr.'s Motion to Dismiss the Complaint

with payment. The Letter cautions: **"PLEASE NOTE: WE WILL ADD $3.00 TO ALL CREDIT CARD CHARGES FOR THIS CONVENIENCE."**[2]

Thomas alleges—counterintuitively—that because the only way to avoid the Convenience Fee according to the Letter is to mail a check or money order, "Defendants' collection letters . . . are designed to drive least sophisticated consumers, such as Plaintiff, to make payments by credit card." (*Id.* ¶¶ 32–34) He also alleges that the Convenience Fee language is "intended to falsely convey that Defendants are legally and/or contractually permitted to charge a $3.00 'convenience fee' . . . when in fact such a fee/charge is neither authorized by contact nor permitted by law," and that the original creditor— Allergy Consultants PA—does not charge consumers a $3.00 convenience fee to pay by credit card. (*Id.* ¶¶ 35, 39). Further, alleges Thomas, the language concerning the Convenience Fee is materially false and intended to confuse letter recipients "about the exact amount of money they allegedly owed." (*Id.* ¶ 41) Thomas claims that Youderian, as a matter of policy and practice, makes false representations in debt collection letters concerning services rendered or compensation received and collects unauthorized amounts "incidental to the principal obligation." (*Id.* ¶ 48).

Seeking actual and statutory damages, attorney's fees, and costs for Youderian's violation of the FDCPA, as authorized by 15 U.S.C. § 1692k, (*see generally Id.* ¶¶ 64–73, VIII), Thomas seeks to join as a class of "consumers" (as defined by 15 U.S.C. § 1692a(3)), all persons with an address in New Jersey who paid the Convenience Fee and/or to whom Youderian sent a letter containing a statement about the Convenience Fee. (*Id.* VIII, ¶ 52)

Thomas alleges Youderian has violated several provisions of the FDCPA, as follows:

---

[2]      A copy of Letter is attached to the Amended Complaint as Exhibit A. On a motion to dismiss, a court may consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993). The actual text of the letter has the word "conveneince," an obvious typo which I will ignore.

(a) Defendants made false, deceptive or misleading representations or means in connection with the collection of a debt, in violation of 15 U.S.C. § 1692e;

(b) Defendants made false representations of the character, amount, or legal status of a debt, in violation of 15 U.S.C. § 1692e(2)(A);

(c) Defendants made false representations that services rendered or compensation may be lawfully received, in violation of 15 U.S.C. § 1692e(2)(B);

(d) Defendants threatened to take any action that cannot legally be taken or that is not intended to be taken, in violation of 15 U.S.C. § 1692e(5);

(e) Defendants used false representations or deceptive means to collect or attempt to collection a debt, in violation of 15 U.S.C. § 1692e(10)

(f) Defendants used unfair or unconscionable means to collect or attempt to collect a debt, in violation of 15 U.S.C. § 1692f;

(g) Defendants attempted to collect any amount (including any interest, fee, charge, or expense incidental to the principal obligation) not expressly authorized by the agreement creating the debt or permitted by law, in violation of 15 U.S.C. § 1692f(1); and

(h) Defendants failed to properly disclose the amount of the debt, in violation of 15 U.S.C. § 1692g(a)(1).

(AC ¶ 71(a)–(h))[3]

## Legal Standard

Under Fed. R. Civ. P. 12(b)(6), the defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n. 9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New*

---

[3]   Thomas does not sort these alleged violations into separate counts in the amended complaint, but for clarity, I will refer to them as separate claims, in accordance with the letters assigned to them above. Thus "claim a" alleges a violation of Section 1692e, "claim b" alleges a violation of subsection 1692e(2)(A), and so on.

*Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

Federal Rule of Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also West Run Student Housing Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

In addition to seeking to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the defendants contend that Thomas lacks standing. Standing has a Constitutional aspect, which implicates the court's subject matter jurisdiction under Rule 12(b)(1).

Rule 12(b)(1) challenges may be either facial or factual attacks. *See* 2 Moore's Federal Practice § 12.30[4] (3d ed. 2007); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A facial challenge asserts that the complaint does not allege sufficient grounds to establish subject matter jurisdiction. *Iwanowa*, 67 F. Supp. 2d at 438. A court considering such a facial challenge assumes that the allegations in the complaint are true, and may dismiss the complaint only if it nevertheless appears that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction. *Cardio–Med. Assoc., Ltd. v. Crozer–Chester Med. Ctr.*, 721 F.2d 68, 75 (3d Cir. 1983); *Iwanowa*, 67 F. Supp. 2d at 438. A factual attack, on the other hand, permits

the Court to consider evidence extrinsic to the pleadings. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000), *holding modified on other grounds by Simon v. United States*, 341 F.3d 193 (3d Cir. 2003). Thus "Rule 12(b)(1) does not provide plaintiffs the procedural safeguards of Rule 12(b)(6), such as assuming the truth of the plaintiff's allegations." *CNA v. United States*, 535 F.3d 132, 144 (3d Cir. 2008).

## **Analysis**

1. <u>Standing</u>

Youderian protests that the $3.00 fee was authorized by agreement and by law. The Court's assessment of Article III standing, however, occurs upstream of that Rule 12(b)(6) merits analysis. The standing question is generally not an inquiry about the validity of the plaintiff's claim, but "an inquiry about the plaintiff: is this the right person to bring this claim." (Pl. Br. 11 (citing *Davis v. Wells Fargo*, 824 F.3d 333, 348 (3d Cir. 2016) (citing *Raines v. Byrd*, 521 U.S. 811, 818, 117 S. Ct. 2312 (1997))). I must determine whether Thomas's claim of an FDCPA violation is adequately connected to a claim of a concrete injury-in-fact suffered by Thomas himself.

I am cognizant of the law's reifying tendency to treat "standing" as an identifiable thing that a plaintiff does or does not "have." A court can go astray in ascribing objective reality to what are in truth policy choices. I am persuaded, however, that Thomas has pled a concrete injury-in-fact of the kind this statute was intended to redress.

*a. Spokeo*

Under Article III of the U.S. Constitution, a plaintiff must establish that standing to sue. As the Supreme Court recently summarized in *Spokeo, Inc. v. Robins*:

> [S]tanding consists of three elements. *Lujan,* 504 U.S., at 560, 112 S. Ct. 2130. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Id.,* at 560–561, 112 S. Ct. 2130; *Friends of the Earth, Inc.,* 528 U.S., at 180–181, 120 S. Ct. 693.

6

> The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements. *FW/PBS, Inc. v. Dallas,* 493 U.S. 215, 231, 110 S. Ct. 596, 107 L. Ed. 2d 603 (1990). Where, as here, a case is at the pleading stage, the plaintiff must "clearly ... allege facts demonstrating" each element. *Warth, supra,* at 518, 95 S. Ct. 2197.

136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016).

That constitutional injury-in-fact must be "concrete and particularized" and "fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014) (citing *Lujan, supra*). A particularized injury is one that affects the plaintiff in a "personal and individual way" and a concrete injury is one that actually exists, though it need not be tangible. *Spokeo, Inc.*, 136 S. Ct. at 1548–49 (quoting *Lujan*, 504 U.S. at 560 n.1).

Youderian argues that Thomas fails to establish any injury-in-fact. There is no doubt that Thomas's alleged injury is particularized; it clearly is, because Thomas personally received the Letter, and the debt reported therein is said to be his. Rather, Youderian claims the injury Thomas alleges is not sufficiently concrete because it amounts to nothing more than a bare procedural violation. The amended complaint does not allege that Thomas paid his reported debt using a credit card, thereby incurring the $3.00 fee, or indeed that he paid the debt at all, by any means. (Br. 8)

In *Spokeo*, the plaintiff alleged that Spokeo, the operator of an online "people search engine" that conducts computerized background checks, violated the Fair Credit Reporting Act of 1970 ("FCRA") by providing inaccurate personal information about the plaintiff to Spokeo's customers. The plaintiff did not allege actual damages, prompting Spokeo to challenge the plaintiff's standing to sue. *Id.* at 1546. Reasoning that the plaintiff's allegation of a "bare

procedural violation" of the FCRA might result in no harm at all,[4] the Supreme Court reversed the Ninth Circuit, which, without separately analyzing particularity and concreteness, had concluded that the alleged violation of a statutory right was sufficient injury-in-fact to confer standing—particularly because the plaintiff had a "personal interest[] in the handling of his credit information." *Id.* at 1550; *Robins v. Spokeo, Inc.*, 742 F.3d 409, 413–14 (9th Cir. 2014). The Supreme Court took no position as to whether the Ninth Circuit's ultimate conclusion—that [the plaintiff] adequately alleged an injury in fact—was correct." *Id.*

Thomas cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." (Br. 8 (quoting *Spokeo, Inc.*, 136 S. Ct. at 1549)). But does Thomas merely allege a "bare procedural violation" here, or does he also identify concrete, albeit intangible, harm? In *Spokeo*, the Supreme Court explained that whether an intangible harm rises to the level of injury-in-fact depends on historical practice and Congressional judgment. *Id.* at 1549. Specifically, courts should look to (a) whether the right violated was one traditionally recognized at law, and (b) whether Congress has elevated it to the status of a legally cognizable, redressable injury. *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, No. 15-2309, 2017 WL 242554, at *9 (3d Cir. Jan. 20, 2017) (citing *Spokeo*, 136 S. Ct. at 1549).

Thus, "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact. . . . [A] plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." *Id.* (quoting *Spokeo*, 136 S. Ct. at 1549). *See also In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 273 (3d Cir. 2016), *cert. denied sub nom. C. A. F. v. Viacom Inc.* (U.S. Jan. 9, 2017) ("in some cases an injury–in–

---

[4] To illustrate, the Court stated: "An example that comes readily to mind is an incorrect zip code. It is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm." *Id.* at 1550.

fact may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing."). But, "Congress's role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo*, 136 S. Ct. at 1549. "Essentially, 'the question framed by [*Spokeo*'s] discussion [is] whether the particular procedural violations alleged in [a] case entail a degree of risk sufficient to meet the concreteness requirement.'" *Bock v. Pressler & Pressler, LLP*, 658 F. App'x 63, 65 (3d Cir. 2016) (quoting *Spokeo*, 136 S. Ct. at 1550).

### b. Post-Spokeo cases alleging FCRA violations and privacy breaches

The U.S. Court of Appeals for the Third Circuit has not explicitly resolved whether, in light of *Spokeo*, a bare violation of the FDCPA constitutes concrete injury.[5] Rather, the cases applying *Spokeo* focus on disclosures of private information in violation of the FCRA. *Compare, e.g., Bock v. Pressler & Pressler, LLP*, 658 F. App'x at 65 (*sua sponte* remanding to the district court under the freshly-decided case of *Spokeo*, to more fully analyze standing to bring FDCPA claim), *with In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 274 (3d Cir. 2016), *cert. denied sub nom. C. A. F. v. Viacom Inc.* (U.S. Jan. 9, 2017) (alleged disclosure of information about personal online behavior in violation of state and federal privacy statutes is concrete and particularized injury-in-fact), *and In Re: Horizon Healthcare Services Inc. Data Breach Litigation*, No. 15-2309,

---

[5]    Some pre-*Spokeo* cases in this Circuit held that a mere showing of a statutory violation is sufficient to confer standing under FDCPA, a statute that provides for statutory damages. *E.g., Salvati v. Deutsche Bank Nat'l Trust Co., N.A.*, 575 F. App'x 49, 56 (3d Cir. 2014) (non-precedential) (plaintiff suing under the FDCPA had standing to sue for bare violation of the act because the act provided for statutory damages); *see also Sacchi v. Care One, LLC*, No., 2015 WL 3966034 (D.N.J. June 30, 2015) ("A statute may permit recovery of statutory damages for statutory violations even when the plaintiff had not suffered actual damages."). Post-*Spokeo*, such cases must be relied on with great care, if at all.

9

2017 WL 242554, at *12 (3d Cir. Jan. 20, 2017) (whether or not a "procedural" violation of the FCRA would confer standing, it was sufficient to allege that lax security procedures had permitted the theft of a laptop containing personal data, even if no further exploitation of the data was alleged).

A debt collector's disclosure of private information, even if it did not lead to economic loss, might give rise to standing. Privacy is a right traditionally recognized at law, and Congress might permissibly declare certain information to be protected, elevating its disclosure to the status of an actionable harm. *Id.*[6] Such privacy violations, then, may constitute a concrete injury resulting from a violation of FCRA. But such cases are not necessarily instructive here, where Thomas does not allege that an FCDPA violation resulted in the particular harm of disclosure of private information.

### c. Post-Spokeo FDCPA cases in this District

I take guidance from cases by judges in this district that have applied *Spokeo* to FDCPA claims. For example, on nearly identical allegations of an unauthorized convenience charge (albeit on summary judgment, not a motion to dismiss), Judge Martinotti held that a complaint alleging violations under Sections 1692e and 1692f(1) had failed to set forth a concrete injury. *See Benali v. AFNI, Inc.*, No. CV 15-3605-BRM-DEA, 2017 WL 39558, at *1 (D.N.J. Jan. 4, 2017). There, however, the plaintiff had also alleged that he recognized, on reading the letter, that the debt was not his. *Id.* at *5. Because the plaintiff could not have been confused, and would not have paid the debt, Judge

---

[6]     *See also Nickelodeon,* 827 F.3d 262 at 274 (citing *Google,* 806 F.3d at 134 & n. 19 (3d Cir. 2015)). *Nickelodeon* noted that *Spokeo* had not altered the court's "prior analysis in *Google*" regarding standing in the context of violations of federal privacy law. *Nickelodeon,* 827 F.3d at 274. Still, a concrete injury to privacy rights is required. *See In re Horizon Healthcare Services Inc. Data Breach Litigation,* No. 15-2309, __ F.3d __, 2017 WL 242554 at *9–*11 (3d Cir. Jan. 20, 2017) (stating that "procedural" violation of FCRA might not confer standing under *Spokeo,* but that the plaintiffs had pled a substantive privacy breach where lax procedures had permitted the theft of laptops containing private information).

Martinotti concluded that "Defendant's alleged FDCPA violations did not, in fact, result in any actual or threatened harm . . . ." *Id.* at *6. [7]

On different facts, however, Judge Martinotti reached the opposite conclusion in *Carney v. Goldman*, No. CV 15-260-BRM-DEA, 2016 WL 7408849 (D.N.J. Dec. 22, 2016). There, on a motion to dismiss, he found that the plaintiff had alleged standing based on "informational injury" and "risk of economic injury." In *Carney,* the defendant's debt collection letters demanded an amount that included attorney's fees and costs not yet due. Such demands, Judge Martinotti held, were legitimately alleged to have inflicted a concrete injury redressable by the FDCPA Section 1692e. *Id.* at *2, 5. To arrive at this determination, Judge Martinotti looked to the historical practice and Congressional judgment concerning the FDCPA:

> Congress has long provided plaintiffs with the right to seek redress from debt collectors for the very conduct alleged here. *See Nickelodeon*, 827 F. 3d at 274. Indeed, in the short time since *Spokeo* was decided, district and circuit courts around the country have rejected similar challenges to standing in FDCPA cases. *See, e.g., Blaha*, 16-cv-2291 (Slip Op., Nov. 10, 2016); *Church v. Accretive Health, Inc.*, 654 Fed. Appx.

---

[7]    I recently discussed the distinction between violations of bare procedural rights and more substantive rights giving rise to an injury in *In re: Michaels Stores, Inc., Fair Credit Reporting Act (FCRA) Litigation*, No. 14-7563, slip op. at 1–11 (D.N.J. Jan. 24, 2017). There, defendants had allegedly violated an FCRA provision requiring employers to disclose certain information in a conspicuous, stand-alone format. I found no constitutional injury-in-fact, absent any allegation that the job applicant had in fact been denied the requisite information. *Id.* at 7–19. If the message got through, I held, the failure to comply with formatting requirements would not have given rise to any injury. In such circumstances, violation of "technical or procedural requirements *may* cause concrete harm, [but] whether the violation *has* caused such harm is situation-dependent." *Id.* at 14.

Here, if Thomas's claim were merely that he should not be charged $3.00, the fact that he didn't pay the charge might be fatal to standing. But he also alleges an informational injury of the kind addressed by FDCPA: The debt collection letter's language, he says, is false and deceptive in that it deprives him of correct information and implies that an illegitimate $3.00 charge is in fact proper. Whether the charge is truly unauthorized, or bears the necessary relation to the underlying debt, is a merits question, not a standing question. I focus here on the claim and Thomas's standing to assert it.

990 (11th Cir. 2016); *Prindle v. Carrington Mort. Servs., LLC*, 3:13-cv-1349, 2016 WL 4369424 (M.D. Fla. Aug. 16, 2016); *Daubert v. Nra Group, LLC*, 3:15-cv-718, 2016 WL 4245560 (M.D. Pa. Aug. 11, 2016); *Lane v. Bayview Loan Servicing, LLC*, 15-cv-10446, 2016 WL 3671467 (N.D. Ill. July 11, 2016); *Quinn v. Specialized Loan Servicing, LLC*, 16-cv-2021, 2016 WL 4264967 (N.D. Ill. Aug. 11, 2016).

The FDCPA unambiguously grants recipients of debt-collection letters (such as Plaintiffs) a right to be free from abusive collection practices. In other words, the FDCPA "create[s] a private duty owed personally to" a consumer to refrain from using false, deceptive, or misleading means or representations in attempting to collect a debt. *See Spokeo*, 136 S. Ct. at 1554 (Thomas, J., concurring). Because Plaintiffs have a personal statutory right to be free from abusive debt-collection practices, and because Plaintiffs have alleged facts plausibly showing Defendant violated that right, Plaintiffs "need not allege any additional harm." *See id*. at 1549 (emphasis omitted).

*Id*., at *5.

Similarly, in another recent case in this district, *Blaha v. First National Collection Bureau*, Case No. 16-2791, slip op. at 13–16 (D.N.J. Nov. 10, 2016), Judge Walls found sufficient concrete injury-in-fact where the plaintiff alleged that the defendants' collection letter failed to disclose that the debt sought was time-barred. Plaintiffs thus had "made a plausible claim under 1692e(2)(A), which specifically prohibits the false representation of the character or legal status of any debt." *Id.* at 12, 15. There, Judge Walls considered Congress's motivation in enacting the FDCPA—"'abundant evidence of the use of abusive, deceptive, and unfair debt collection practices' and the inadequacy of existing laws and procedures designed to protect consumers." *Id.* (quoting 15 U.S.C. § 1692(a), (b)).

These and other recent cases trend in favor of finding concrete injury under the FDCPA where the amount or validity of the debt has been

Case 2:16-cv-01408-KM-MAH   Document 23   Filed 02/03/17   Page 13 of 32 PageID: 267

misstated.[8] That injury, as held in the cited cases, is one recognized by Section 1692e and its subsections, which protect consumers from false, deceptive, and misleading representations. I am aware of no cases post-*Spokeo* that address whether a bare violation of 1692f or f(1) alone —the use of "unfair or unconscionable means" to collect a debt—creates injury-in-fact. Where the underlying theory is one of falsity or deception, however, the standing analysis under 1692e or 1692f should be similar.

To my mind, such cases fit easily within the *Spokeo* rationale. The right not to be given false information about the true amount owed is rooted in an interest traditionally recognized at law. Congress, in enacting the FDCPA, could give content to that interest and elevate particular violations of it to the status of a viable federal cause of action.

### d. This case

In this case, the question is a closer one, for at least two reasons. First, the $3.00 convenience fee is not rolled into the balance of the debt, but is presented separately as a cost of selecting the option of paying the debt by credit card. Second, Thomas didn't pay the $327.80 debt, whether by credit card or by any other means, and he did not incur the $3.00 fee.

---

[8]    *See Church v. Accretive Health, Inc.,* 654 F. App'x 990, 995 (11th Cir. 2016) (allegation that plaintiff did not receive FDCPA-required disclosures sufficiently alleged concrete injury); *Medina v. AllianceOne Receivables Mgmt., Inc.,* 2017 U.S. Dist. LEXIS 7325, at *1 (E.D. Pa. Jan. 19, 2017) (where sentence in debt collection letter was found deceptive or misleading under Section 1692e so as to survive a motion to dismiss, "[t]he deceptive declaration in the letter ... creates a particularized and concrete injury, at the very least unnecessary fear and anxiety on the part of the consumer. While the harm may be intangible, it involves a de facto injury nonetheless. The FDCPA was enacted to provide redress for such a result."); *Bautz v. ARS Nat'l Servs., Inc.,* No. 16CV768JFBSIL, 2016 WL 7422301, at *1 (E.D.N.Y. Dec. 23, 2016) ("[A]dequately alleging a 'false, deceptive, or misleading representation' under Section 1692e that is materially misleading to the least sophisticated consumer satisfies the concrete injury component of Article III standing because such conduct violates an individual's substantive statutory right to be free of abusive debt practices."); *Kaymark v. Udren Law Offices, P.C.,* 2016 WL 7187840, at *7 (W.D. Pa. Dec. 12, 2016) ("The goal of the FDCPA is to protect consumers from harmful debt-collection practices, and debtors have a statutory right to be free from being subjected to false, deceptive, unfair or unconscionable means to collect a debt." (internal quotation marks omitted)).

13

The amended complaint alleges that the Convenience Fee is improper. It is not controversial that standing would exist if Thomas had taken the credit card option and paid the fee. He could then point to a concrete injury in the amount of $3.00. But he did not. The injury must be found elsewhere.

The amended complaint suggests that there is an injury because some "Consumers" pay medical bills using insurers' prepaid cards, or pay them from health savings accounts. (AC ¶¶ 37, 38) Neither, according to the amended complaint, would reimburse such a "Consumer" for the $3.00 fee. But Thomas does not allege that *he* ever pays medical bills this way. And he does not allege that he paid, or sought to pay, *this* medical bill at all. Personal standing based on a hypothetical injury to third-party "Consumers" is highly problematic.

In his brief, Thomas offers another theory of injury.[9] The harm, he says, is not that gullible consumers will be inveigled into using a credit card, but that they will be dissuaded from doing so. Mere notice of the $3.00 fee constitutes a harm, he says, because it would influence the proverbial least sophisticated consumers to "avoid paying by a credit card, luring them into paying by using methods more profitable to Defendants and more inconvenient to the consumer." (Br. 24) The amended complaint does not allege such facts, however, and the claim of relative inconvenience is far from self-evident. The Letter's payment coupon invites the recipient to pay by mail, enclosing either a check or the necessary credit card information, alternatives that seem to be equal in convenience—physical convenience, at least.[10]

---

[9]   Although I consider this theory, a statement in a brief will not amend a deficient complaint. *See, e.g., Pennsylvania ex. rel Zimmerman v. PepsiCo, Inc.,* 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."); *Talley v. United States,* No. 11-1180, 2014 WL 282680, at *5 (D.N.J. Jan. 24, 2014) (holding that "a complaint cannot be amended through the brief of a party in opposition to a motion to dismiss").

[10]   Inferably, the credit card information, unlike a check, could also be conveyed to Youderian by phone. Neither side claims, by the way, that all payment options must be cost-free; postage, the fee for a money order, and the cost of telephone service, at a minimum, are assumed to be borne by the consumer. Such charges, however, are not levied by a debt collector.

"Luring" a consumer into *not* paying a $3.00 fee does not comport with my intuitive concept of an injury. Still, the claim is that paying by credit card is something convenient or desirable for the consumer—and that claim is not implausible in light of everyday experience.[11] Attaching a (by hypothesis, invalid) $3.00 fee to that common option denies or at least burdens that choice. In that sense it is tantamount to increasing the amount of the debt. Thus the consumer is at least at risk of losing something as a result of the implied representation that the $3.00 fee is legitimate. That reasoning might confer standing on somebody, but I am not certain that it suffices to confer standing on Thomas. Thomas does not allege that *he* was influenced in his decision-making, whether for good or for ill. He does not allege that *he* was lured into paying the bill by check or money order because of the $3.00 charge. Rather, he purports to speak for others.

Nevertheless, I think there is barely enough for standing in this case. Here, the claim, whether under 1692f or 1692e, rests on an allegedly misleading statement in the Letter. Thomas alleges that the language concerning the Convenience Fee is false and deceptive. (*See* ¶¶ 35–36, 40.) The Letter is alleged to misrepresent the fee as a pass-along of an expense, while it actually represents an additional source of profit to the debt collector. The Letter is alleged to impliedly represent that the debt collector is authorized to charge what is in fact an unauthorized fee. The least sophisticated consumer, then, is at risk of being misled into paying the $3.00 Convenience Fee. Alternatively, such a consumer is at risk of forgoing the convenience of paying

---

[11]    It might be that Thomas means—although he does not say so—that the credit card option is more "convenient" because it permits a consumer who lacks ready cash to pay the bill and get the creditor off his back. (Of course, in another lawsuit, encouraging consumers to run up credit card debt might itself be condemned as an unconscionable practice.) Every creditor, of course, would prefer to be paid now; the creditor is indifferent to whether the debtor obtained the money by borrowing from someone else. Conversely, however, a creditor could presumably demand cash on the barrelhead, dispensing with the credit card procedure altogether. In Youderian's view, affording the additional *option* of paying by credit card does the consumer no injury. I do not reach that merits question.

the bill on credit (or, I suppose, at risk of giving up on paying it for lack of ready money). I do not suggest that Thomas has a personal cause of action to assert the rights of others who actually lost money (he doesn't). I mean only that these are the *kind* of misleading statements which, if sent to a debtor, might give rise to an actionable injury under this statute. Deprivation of the right to be free of false or deceptive debt collection information, with the attendant risk of economic injury, is an interest recognized by the statute, and one reasonably rooted in the traditions of the common law. Under *Spokeo,* it may give rise to Article III standing.

The pitfalls of such a claim, at the merits stage, are many. But these allegations are sufficient to support Article III standing and permit an examination of the merits.

### 2. Failure to State a Claim

To state a claim under the FDCPA, a plaintiff must allege that "(1) [he] is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Douglass v. Convergent Outsourcing,* 765 F.3d 299, 303 (3d Cir. 2014); *see also Piper v. Portnoff Law Assocs., Ltd.,* 396 F.3d 227, 232 (3d Cir. 2005); *Johns v. Northland Grp., Inc.,* 76 F. Supp. 3d 590, 597 (E.D. Pa. 2014). Thomas clearly alleges the first three factors and Youderian does not dispute this. (*See* 15 U.S.C. § 1692a; AC ¶¶ 17–19, 21, 65). What must be determined is whether Thomas has plausibly alleged that Youderian's debt collection efforts violated some provision of the FDCPA.

Youderian first argues that the amended complaint must be dismissed because the Convenience Fee is valid: both permitted under New Jersey law and authorized under an agreement Thomas entered into with his medical creditor, Allergy Consultants PA. Alternatively, says Youderian, even if the Convenience Fee is not authorized, the representations about it in the Letter are not material.

a. *Standards: "Least Sophisticated Debtor" and "Materiality"*

Before addressing Youderian's arguments, I will say a word about the legal standards governing FDCPA claims based on misleading communications in connection with collection of a debt.

Courts routinely apply the "least sophisticated debtor" standard when "analyz[ing] the communication giving rise to the FDCPA claim," *Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 174 (3d Cir. 2015) (quoting *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008)). As the Third Circuit explained in *Jensen v. Pressler & Pressler*:

> Although the least sophisticated debtor standard is "lower than the standard of a reasonable debtor," it "preserv[es] a quotient of reasonableness and presum[es] a basic level of understanding and willingness to read with care." *Id.* (quoting *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354–55 (3d Cir.2000)). In so doing, it "give[s] effect to the Act's intent to 'protect[ ] the gullible as well as the shrewd.' " *Campuzano–Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294, 298 (3d Cir.2008) (second alteration in original) (quoting *Brown*, 464 F.3d at 453).
>
> The standard is an objective one, meaning that the specific plaintiff need not prove that *she* was actually confused or misled, only that the objective least sophisticated debtor would be. *See Pollard v. Law Office of Mandy L. Spaulding*, 766 F.3d 98, 103 (1st Cir.2014) ("[T]he FDCPA does not require that a plaintiff actually be confused."); *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2d Cir.1993) ("We apply an objective test based on the understanding of the 'least sophisticated consumer' in determining whether a collection letter violates section 1692e."). Thus, "the FDCPA enlists the efforts of sophisticated consumers ... as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others." *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 91 (2d Cir. 2008).

791 F.3d 413, 418–19 (3d Cir. 2015).

17

The Letter—the relevant communication between debt collector and consumer—is implicated in each of Thomas's claims. It must therefore be read with the eyes of the least sophisticated debtor. *See Brown v. Card Serv. Ctr.*, 464 F.3d 450, 454 (3d Cir. 2006) ("[A]ny lender-debtor communications potentially giving rise to claims under the FDCPA . . . should be analyzed from the perspective of the least sophisticated debtor.").

"[W]hether the least sophisticated debtor would be misled by a particular communication is a question of law that may be resolved in a Rule 12(b)(6) motion." *Smith v. Lyons, Doughty & Veldhuius, P.C.*, No. CIV.A. 07-5139, 2008 WL 2885887, at *3 (D.N.J. July 23, 2008). *See also Wilson v. Quadramed Corp.*, 225 F.3d 350, 353 (3d Cir. 2000), *as amended* (Sept. 7, 2000) ( [W]hether language in a collection letter contradicts or overshadows the validation notice is a question of law."); *Galuska v. Collectors Training Inst. of Ill., Inc.*, No. 3:07-CV-2044, 2008 U.S. Dist. LEXIS 39508, at *8,2008 WL 2050809 (M.D.Pa. May 13, 2008) ("Whether a communication is misleading under the FDCPA presents a question of law for the court; disputed facts must be resolved by a jury.").

 Section 1692e contains an additional materiality requirement, but it "is simply a corollary of the well-established 'least sophisticated debtor' standard." *Jensen v. Pressler & Pressler,* 791 F.3d 413, 418 (3d Cir. 2015). "[A] statement in a communication is material if it is capable of influencing the decision of the least sophisticated debtor." *Id.* at 420–21. That is not a high bar. "[T]he materiality requirement, correctly applied, effectuates the purpose of the FDCPA by precluding only claims based on hypertechnical misstatements under § 1692e that would not affect the actions of even the least sophisticated debtor." *Id.* at 422.

   b.  *§ 1692f (claims f and g)*

Section 1692f is a catchall provision providing that a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Section 1692f's subsections then itemize nonexclusive examples of conduct that constitute a violation of the catchall provision.

18

Although Thomas seeks relief under several provisions of the FDCPA (listed *supra*), the parties' briefing focuses on subsection 1692f(1): "The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).[12]

Courts have often applied Section 1692f(1) in the context of convenience fees, also known as service charges. It is settled that such a fee does not violate the FDCPA (1) where it is expressly permitted under state law; or (2) if state law does not expressly authorize or prohibit the charge, where the customer expressly agreed to the fee in the contract creating the debt. *Tuttle v. Equifax Check*, 190 F.3d 9, 15 (2d Cir. 1999); *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 407–408 (3d Cir. 2000) (adopting the interpretation set forth in *Tuttle* and FTC Staff Commentary).[13]

Youderian argues that New Jersey law expressly permits imposition of credit card convenience fees. In support, he cites N.J. Stat. Ann. § 40A:5-46 (and a related regulation, N.J. Admin. Code 5:30-9.9). (Br. 11) The statute does not, however, remotely approach an explicit authorization of credit card service charges by debt collectors, or indeed any private party. It reads:

---

[12]   Actually, the division between Sections 1692f and 1692e is not so neat. Under Section 1692e, a communication may be misleading if it implies that the debt collector is authorized to collect a charge that in fact is prohibited by 1692f. Under 1692f, the collection of such a charge is prohibited, but so is an "attempt" to collect such a charge, and a communication may constitute such an attempt. *See* n.23, *infra.*

[13]   That a fee expressly prohibited by law would be impermissible presumably went without saying.

The consumer's agreement to a charge or fee, according to the FTC Staff Commentary on the FDCPA, may take the form of acquiescence when disclosure of the charge is clear (for example, by a sign posted at the merchant's premises): "A debt collector may establish an 'agreement' without a written contract. For example, he may collect a service charge on a dishonored check based on a posted sign on the merchant's premises allowing such a charge, if he can demonstrate that the consumer knew of the charge." Statements of General Policy or Interpretation Staff Commentary On the Fair Debt Collection Practices Act, 53 FR 50097-02.

19

> Notwithstanding the provisions of any other law to the
> contrary and if not legally prohibited by an association
> or by an issuer, local units are authorized to assess
> and collect service charges related to obligations owed
> to or collected by the local unit when credit cards,
> debit cards or electronic funds transfer systems are
> utilized.

N.J. Stat. Ann. § 40A:5-46. That statute is part of Title 40A, "Municipalities
and Counties." The particular statutory section cited is part of the "Local Fiscal
Affairs Law," N.J. Stat. Ann. § 40A:5-1 *et seq.* A "local unit," as used therein,
refers to a local *governmental* unit: a county, a municipality, or other listed
public authority. *See* N.J. Stat. Ann. § 40A:5-2 (Definitions); N.J. Admin. Code
§ 5:30-15.2. A "local unit" does not include a private creditor or debt collector.
And indeed, the statute phrases its authorization as a governmental exemption
from rules that might apply to other entities ("Notwithstanding the provisions of
any other law to the contrary....").[14]

    Youderian has thus failed to identify any New Jersey law expressly
authorizing private parties like himself to impose this Convenience Fee. On the
other hand, neither party points to any New Jersey law that prohibits the
Convenience Fee, either. Where a fee is neither expressly authorized nor
prohibited by law, it may be imposed if it is authorized by the agreement that
created the debt at issue. *See Tuttle, supra; Pollice, supra.*

    To establish that Thomas agreed to this Convenience Fee, Youderian
submits with his motion a copy of the "Financial Policy/Patient Guarantor
Agreement" between Thomas and Allergy Consultants PA (the "Agreement").
(*See* Certification of Meredith Kaplan Stoma, Ex. H (ECF no. 12-2 at 22),
hereinafter "Agreement") It is that Agreement which allegedly gave rise to the

---

[14]    Youderian also cites proposed legislation authorizing the Department of Motor
Vehicles to charge convenience fees. (Br. 11, citing 2008 Bill Text N.I. A.B. 3251, 2010
Bill Text N.I.A.B. 155, and 2012 Bill Text N.I. A.B. 2159). That legislation, even if
enacted, would be similarly inapplicable. The debt collection in question here has
nothing to do with State government or the DMV.

$327.80 debt in question. It appears to be signed by Thomas, and no objection is raised to its authenticity.[15]

Youderian's argument immediately runs into trouble. Support for it cannot be found in the plain wording of the Agreement, which states:

> 5. I further understand that any amount left unpaid for more than 30 days will be considered delinquent, and may be referred to a collection agency or attorney .
> . . .
>
> 6. If my account is referred to a collection agency and/or attorney for collection, I agree to be responsible for the payment of an additional collection fee in an amount equal to 30% of my outstanding balance, inclusive of accrued interest. I also understand there is a $15.00 returned check fee should, a check be returned for any reason.

(Agreement ¶¶ 5, 6) As Thomas points out (Opp. 23), the Agreement does not "expressly authorize" a $3.00 convenience fee for credit card charges, as

---

[15]    Thomas's objection to Youderian's submission of the Agreement is a technical one. Ms. Stoma's sponsoring certification (ECF no. 12-2), he says, does not comply with 28 U.S.C. § 1746. (Opp. 22–23) Any error is harmless, given that I am considering the Agreement but nevertheless rejecting Youderian's argument on the merits. Counsel may wish to avoid future controversy by revising their form unsworn certification to conform to the precise wording of § 1746.

More generally, the Agreement is properly considered on a motion to dismiss without converting it to one for summary judgment. *See* Fed. R. Civ. P. 12(d). The amended complaint cites and relies on the Agreement. Most pertinently, the amended complaint preemptively alleges that the Convenience Fee "is not expressly authorized by the agreement creating the debt." (AC ¶ 42)

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings. However, an exception to the general rule is that a 'document *integral to or explicitly relied* upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir.1996)). "[W]hat is critical is whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited." *Id.* The court may also consider any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *In re Asbestos Products Liability Litigation (No. VI)*, 822 F.3d 125, 134 & n.7 (3d Cir. 2016) (quoting *PBGC v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

Section 1692f(1) requires. True, it authorizes a 30% "collection fee," and 30% of this $327.80 debt comes out to $98.34, a sum far in excess of $3.00. But I cannot indulge some "no harm, no foul" rule that the debt collector could have charged some other fee, calculated in a different manner, that would have been even larger than the one it did charge. Viewing the Letter through the eyes of the least sophisticated debtor and taking the alleged facts in the light most favorable to Thomas, the amended complaint adequately alleges that this particular Convenience Fee for use of a credit card was not explicitly authorized. And having so alleged, the amended complaint states a claim under the FDCPA.[16]

---

[16]       The "convenience fee" cases have generally found a viable FDCPA claim where there was a communication announcing an invalid convenience fee. An Eastern District of New York case conveniently collected some of the relevant authorities on the merits of such claims:

> In those cases, the defendants did actually attempt to collect allegedly improper fees from the plaintiffs in debt collection letters or by some other means. *See Campbell v. MBI Associates, Inc.*, 98 F. Supp. 3d 568, 571, 579–83 (E.D.N.Y. 2015) (granting a plaintiff's motion for summary judgment on a Section 1692f(1) claim arising from a statement in the debt-collection letter, "There will be a $5.00 processing fee for all credit cards"); *White v. Fein, Such & Crane, LLP*, No. 15-CV-438 (JTC), 2015 WL 6455142, at *1 (W.D.N.Y. Oct. 26, 2015) (denying a Rule 12(b)(6) motion to dismiss a Section 1692f(1) claim based on allegations that a defendant attempted to collect "attorneys' fees and other costs that were unauthorized by law or an agreement between the debtor and the creditor"); *Acosta v. Credit Bureau of Napa Cty.*, No. 14 C 8198, 2015 WL 1943244, at *1 (N.D. Ill. Apr. 29, 2015) (denying a Rule 12(b)(6) motion to dismiss a Section 1692f(1) claim based on a letter to the plaintiff stating that she could pay her debt "via Credit Card ($14.95 Chase Receivables processing fee where applicable)"); *Weast v. Rockport Fin.*, LLC, 115 F. Supp. 3d 1018, 1020 (E.D. Mo. 2015) (denying a Rule 12(b)(6) motion to dismiss a Section 1692f(1) claim where defendant notified the plaintiff by letter that she would be charged an additional $3.00 convenience fee if she made a payment using a credit or debit card); *Quinteros v. MBI Associates, Inc.*, 999 F. Supp. 2d 434, 436, 437–39 (E.D.N.Y. 2014) (finding that the plaintiff stated a Section

Citing *Lee v. Main Accounts, Inc.*, 125 F.3d 855 (6th Cir. 1997), Youderian suggests (but does not expressly argue) in the alternative that the Convenience Fee does not fall within the ambit of Section 1692f(1) in the first place. Youderian stresses that this was not his fee, "but a third-party charge triggered when the debtor chose the option of paying by credit card." *Id.* (*See* Br. 10) Reasonable or not, this argument is factual, and hence premature; *Lee* was dealing with summary judgment and a factual record. *See, e.g., Weast v. Rockport Fin., LLC*, 115 Supp. 3d 1018, 1022–23 (E.D. Mo. 2015) ("Defendant's reliance on *Lee* . . . is misplaced. In that case the court determined on summary judgment that a five percent charge on payments made by credit card did not violate the FDCPA, because the defendant 'would not have received any additional compensation from the credit card fee.' Such evidence may be forthcoming at the summary judgment stage, but based on the record

---

1692f(1) claim based on a debt collection letter stating, "Our office accepts Visa, MasterCard and American Express which you may pay over the phone or online at www.paymbi.com. There will be a $5.00 processing fee for all credit cards or checks over the phone"); *Hallmark v. Cohen & Slamowitz, LLP*, 293 F.R.D. 410, 413 (W.D.N.Y. 2013) (denying a Rule 12(c) motion to dismiss a claim by a consumer that a debt collector violated Section 1692f(1) by attempting to charge him $140 in court fees, in addition to his underlying debt); *Shami v. Nat'l Enter. Sys.*, No. 09-CV-722 RRM VVP, 2010 WL 3824151, at *1 (E.D.N.Y. Sept. 23, 2010) (denying a Rule 12(c) motion to dismiss a Section 1692f(1) claim based on a collection letter stating, "Transaction fees will be charged if you use the automated phone system or the internet to make payment on this account").

*Datiz v. Int'l Recovery Assocs., Inc.*, No. 15CV3549ADSAKT, 2016 WL 4148330, at *5 (E.D.N.Y. Aug. 4, 2016). The cases cited in *Datiz* were pre-*Spokeo*, and are therefore of limited assistance as to the standing issues, but they remain good law as to the merits of an FDCPA claim. *See also Johnson-Morris v. Santander Consumer USA, Inc.*, No. 16 C 1456, 2016 WL 3671468, at *6 (N.D. Ill. July 11, 2016); *Wittman v. CB1, Inc.*, No. CV 15-105-BLG-BMM, 2016 WL 3093427, at *3 (D. Mont. June 1, 2016). *But see Flores v. Collection Consultants of Cal.*, No. 14-0771, 2015 WL 4254032 (C.D. Cal. Mar. 20, 2015) (holding that $5 convenience fee did not violate § 1692f(1) because it was separate and not incidental to the principal obligation).

23

before it, the Court cannot say that Defendant would not receive any profit from charging $3.00 for each credit/debit card transaction."); *Quinteros v. MBI Assocs., Inc.*, 999 F. Supp. 2d 434, 439–41 (E.D.N.Y. 2014) (rejecting defendant's reliance on *Lee* because the collection letter at issue did not indicate that a reported $5.00 processing fee would be collected by anyone but the defendant).

Youderian's only other argument challenges the materiality of the allegedly misleading statement in the Letter. (Br. 12). Thomas responds that the Third Circuit has only established materiality as a required element of an FDCPA violation with respect to Section 1692e, and therefore the standard does not apply to Section 1692f violations. (Opp. 24)[17] I agree.[18] In any event, there is no substantial issue of materiality; if the fee is not authorized by statute or contract, the implied representation that it was must be material. "'[T]he only inquiry under § 1692f(1) is whether the amount collected was expressly authorized by the agreement creating the debt or permitted by law.' This inquiry d[oes] not turn on the reader's sophistication." (quoting *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 368 (3d Cir. 2011)). *Simon v. FIA Card Servs., N.A.*, 732 F.3d 259, 269–70 (3d Cir. 2013).

I raise one final argument, *sua sponte*, because it has come up in a number of cases addressing Section 1692f(1). Thomas has not alleged that he

---

[17]    Youderian seems to acknowledge this limitation; although he first argues that Thomas's *complaint* must be dismissed for lack of materiality, he concludes later in his moving brief that the collection letter does not violate Sections 1692e or 1692e(10) because the language concerning the $3.00 fee "could not, in any fashion, affect the least sophisticated debtor's 'ability to make intelligent decisions.'" (Br. 14 (citing *Jensen*, 791 F.3d at 422))

[18]    *See Jensen v. Pressler & Pressler*, 791 F.3d 413, 421 (3d Cir. 2015) (adopting a materiality requirement for claims brought under § 1692e); *see also Benyamin Grandovsky v. Hayt & Landau, LLC*, No. CV 15-6451, 2015 WL 7313863, at *2 (D.N.J. Nov. 20, 2015) ("The Third Circuit has stated that a collection letter is deceptive in violation of § 1692e 'when it can reasonably be read to have two or more different meanings, one of which is inaccurate.'. . . However, the Third Circuit recently clarified that letters with at least two different meanings are only deceptive if the ambiguous language in the letters is material." (citation omitted)).

paid the Convenience Fee, or any of his debt whatsoever—he alleges only that "[a]t all times relevant . . . Defendants acted in an *attempt* to collect the Debt." (AC ¶ 23 (emphasis added)) Section 1692f(1), however, refers only to the "collection" of an amount, not the "attempted" collection. This omission has prompted at least the Second Circuit to hold that an attempted collection does not violate 1692f(1). *Bank v. Cooper, Paroff, Cooper & Cook*, 356 F. App'x 509, 511 (2d Cir. 2009) (unpublished) ("[D]efendants never actually collected a $35 bad check fee. Therefore, we do not find a violation of section 1692f(1), which prohibits the collection of unauthorized fees.").

I am hesitant to adopt that analysis; Section 1692f(1) is one of a number of nonexclusive examples of conduct that violates the more general proscription of 1692f, which outlaws attempts. Post-*Bank* cases within the Second Circuit have since determined that the attempted collection of an unauthorized fee violates that backstop provision, Section 1692f. *See Campbell*, 98 F. Supp. 3d at 583 (attempted collection of unauthorized amount violated Sections 1692f as well as 1692e(2));[19] *see also Shami v. Nat'l Enter. Sys.*, 914 F. Supp. 2d 353, 357 (E.D.N.Y. 2012) ("The fact that subsection (1) of § 1692f does not specify that it includes both collections of and *attempts* to collect unauthorized incidental fees does not limit the general provision of the statute that includes attempts to collect. Courts in this circuit and others have continued to resolve cases involving § 1692f(1) where no actual collection appears to have taken place, instead focusing on the communication seeking payment itself." (collecting cases)).

Other courts, including some within the Third Circuit, have taken the more direct route of finding that Section 1692f(1) itself reaches both collection and attempted collection. *See, e.g., Gigli v. Palisades Collection, L.L.C.*, No.

---

[19]     In *Bank*, the court also determined that a debt collector's attempt to collect an unauthorized fee did not violate Section 1692f, but only because all parties recognized the misleading statement as a clerical error. Therefore, the court declined to consider it "unfair or unconscionable," as the catchall Section 1692f requires.

3:CV-06-1428, 2008 WL 3853295, at *5 (M.D. Pa. Aug. 14, 2008) ("Actual collection of such amounts, however, is not required, as § 1692f(1) proscribes the attempted collection of unauthorized debts."); *Barrows v. Chase Manhattan Mortg. Corp.*, 465 F. Supp. 2d 347, 354, 358 (D.N.J. 2006) (although defendants argued plaintiff lacked standing because she never paid the unauthorized fee requested, plaintiff still stated a claim under Section 1692f(1));[20] *Sandlin v. Shapiro & Fishman*, 919 F. Supp. 1564, 1568 (M.D. Fla. 1996) (interpreting Section 1692f(1), as a matter of plain meaning and Congressional intention, to include both collection and attempted collection, pursuant to the generally applicable broader language of Section 1692f).

The Third Circuit has not squarely addressed this interpretive debate, but in an unpublished opinion, embraced the broader interpretation:

> Under 15 U.S.C. § 1692f(1), it is a presumptively prohibited unfair or unconscionable means to collect **or attempt to collect** "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

*Dibattista v. Buckalew, Frizell & Crevina*, LLP, 574 F. App'x 107, 113 (3d Cir. 2014) (unpublished) (emphasis added). *See also Salvati v. Deutsche Bank Nat. Trust Co.*, 575 F. App'x 49, 56 (3d Cir. 2014) (citing 15 U.S.C. § 1692k(a)) (where district court dismissed plaintiff's Section 1692e(2)(A) and 1692f(1) claims because the plaintiff had not actually paid any of the costs and fees he alleged were illegal, "the District Court's conclusion was error because it ignored the fact that, under the FDCPA, a plaintiff may collect statutory damages even if he has suffered no actual damages.") (unpublished).

I am satisfied that the amended complaint sufficiently pleads a claim under either Section 1692f(1) or 1692f. For clarity, I state that I would adopt

---

[20]   The standing aspect of *Barrows* must be considered in light of *Spokeo*, decided some years later.

the broader interpretation of 1692(f)(1), *supra*.[21] Whether to pursue a separate, possibly redundant claim under Section 1692f is left for another day.[22] For now, the motion is denied insofar as it seeks to dismiss claims under Section 1692f(1) or 1692f (claims f and g).

    *c. § 1692e (claims a–e)*

    The amended complaint also asserts that Youderian's Letter violated Section 1692e, including subsections 1692e(2)(A) and (B), 1692e(5), and 1692e(10). (AC ¶ 71, claims a–e) Section 1692e provides that "a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The Section includes a non-exhaustive list of violative conduct. *See* 15 U.S.C. §§ 1692e(1)-(16). Subsection (2) prohibits "the false representation of (A) the character, amount, or legal status of any debt; or (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt." *Id.* Subsection (5) prohibits a "threat to take any action that cannot legally be taken or that is not intended to be taken." *Id.* And subsection (10) prohibits "[t]he use of any false representation or deceptive

---

[21]     As I see it, the only practical difference between these competing interpretations is that, at least under the Second Circuit's reasoning in *Bank*, the attempted collection of an unauthorized fee must be found "unfair or unconscionable" case-by-case to violate catchall Section 1692f. A violation of subsection 1692f(1), in contrast, is presumptively unfair or unconscionable. *See Dibattista v. Buckalew, Frizell & Crevina, LLP*, 574 F. App'x 107, 113 (3d Cir. 2014) (unpublished). Either way, however, the issue presents a question of fact unsuitable for resolution at the motion to dismiss stage. *See DeGeorge v. Fin. Recovery Serv., Inc.*, No. 11-CV-04288, 2012 WL 4473229, at *7 (E.D. Pa. Sept. 28, 2012) ("Whether a debt collector uses unfair or unconscionable means to collect or attempt to collect a debt is generally a question for the jury.").

[22]     A 1692f claim may be dismissed at the pleading stage if it is clearly redundant. *See Corson v. Accounts Receivable Mgmt., Inc.*, No. CIV.A. 13-01903 JEI/, 2013 WL 4047577, at *7 (D.N.J. Aug. 9, 2013); *Shand-Pistilli v. Prof'l Account Servs., Inc.*, No. 10-CV-1808, 2010 WL 2978029, at *6 (E.D. Pa. July 26, 2010). Such dismissal is not required, however. Here, dismissal would have no practical effect on the discovery proceedings, and can await the development of a factual record, summary judgment, and the narrowing of issues for trial.

means to collect or attempt to collect any debt or to obtain information concerning a consumer." *Id.*

To the extent Youderian argues that the Convenience Fee was authorized, his contentions were disposed of in the preceding section. Youderian's remaining argument, particularly applicable to claims a through e, is that the Convenience Fee language, even if a misrepresentation, is not a material one. (Br. 14; Reply 11–12)

### i. § 1692e, (2) and (10) (claims a, b, c, e)

Youderian's materiality defense comes to the fore with respect to the alleged violations under Section 1692e generally (claim a) and subsections 1692e(2) (claims b–c) and (10) (claim e). The Convenience Fee language is not material, says Youderian, because "[i]t could not, in any fashion, affect the least sophisticated debtor's 'ability to make intelligent decisions.'" (Opp. 14 (quoting *Jensen*, 791 F.3d at 422)).

Turning first to claims b and c, Thomas's claims under subsection 1692e(2)(A) and (B), the question is not whether the Convenience Fee language accurately discloses the fee; rather, the question is whether the Convenience Fee language "violates the statute because it falsely implies that Defendant is entitled to collect the processing fee in the first place." *Quinteros v. MBI Assocs., Inc.*, 999 F. Supp. 2d 434, 439 (E.D.N.Y. 2014). The amended complaint alleges that Youderian is without authority to collect the Convenience Fee, and Youderian's motion, as discussed above, is insufficient to repel that allegation. Therefore, the Letter's implicit representation that Youderian *does* have such authority would likely deceive the least sophisticated debtor about "the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A). It would also likely deceive such a debtor into believing that the "services rendered or compensation . . . may be lawfully received . . . ." 15 U.S.C. § 1692e(2)(B). The representation is therefore a materially false representation that violates Section 1692e(2).

28

I join other courts in holding that convenience or processing fee language supporting a Section 1692f(1) claim naturally supports a claim under 1692e(2) as well. For example, in *Quinteros v. MBI Assocs., Inc.*, the court reasoned that the hypothetical least sophisticated consumer would likely read language stating "There will be a $5.00 processing fee for all credit cards or checks over the phone," and believe, incorrectly, that the defendant was legally entitled to collect the five-dollar fee. 999 F. Supp. 2d at 435, 440. The court explained that "even a shrewd consumer would be unlikely to question the legality of a seemingly reasonable five-dollar processing fee, much less turn to the statute books." *Id.* at 440. Therefore, "[b]ecause the Court ha[d] concluded that Plaintiff ha[d] stated a claim under § 1692f(1) of the FDCPA, Plaintiff ha[d] also stated a claim under § 1692e(2)." *Id.*[23]

Thomas's claim under Section 1692e(10) (claim e) survives for similar reasons. Indeed, it is difficult even to meaningfully distinguish subsection 1692e(10) from 1692e(2). If Youderian's allegedly false representation of authority to collect the Convenience Fee could be a material misrepresentation of "the character, amount, or legal status of any debt" or the "compensation which may be lawfully received," and it appears in a debt collection letter, then

---

[23]   *Accord Shami v. Nat'l Enter. Sys.*, No. 09-CV-722 RRM VVP, 2010 WL 3824151, at *4 (E.D.N.Y. Sept. 23, 2010) ("[I]f it is determined that the Collection Letter violates § 1692f(1) by representing that the transaction fees are permissible[,] Defendant also would be in violation of § 1692e(2)."); *Wittman v. CB1, Inc.*, No. CV 15-105-BLG-BMM, 2016 WL 3093427, at *4 (D. Mont. June 1, 2016) ("Plaintiffs concede that [their 1692e(2)] claim depends on the survival of Plaintiffs section 1692f(1) claim."); *Acosta v. Credit Bureau of Napa Cty.*, No. 14 C 8198, 2015 WL 1943244, at *4 (N.D. Ill. Apr. 29, 2015) ("If the debt collection letter violates Section 1692f(1) by representing that the processing fee is permissible, then Defendant also would be in violation of Section 1692e."). *See also Scioli v. Goldman & Warshaw P.C.*, 651 F. Supp. 2d 273, 276–77 (D.N.J. 2009) (""[I]f [defendant] may legally collect both the contractual and statutory attorney[']s fees, then . . . [the defendant] has not made a false representation as to the compensation it may receive, *see* § 1692e(2)(B), nor attempted to collect a fee that is not authorized by law, *see* § 1692f(1)."); *DeHart v. U.S. Bank, N.A. ND*, 811 F. Supp. 2d 1038, 1055 (D.N.J. 2011) (language stating plaintiffs would have to pay debts defendants were prohibited from collecting supported a claim for a violation of both Sections 1692e(2) and 1692f(1)).

surely Thomas has also alleged a "false representation . . . to collect or attempt to collect any debt . . . ." in violation of Section 1692e(10). Perhaps for this reason, "[c]ourts have long held that after finding a valid claim under a more specific subsection of § 1692e . . . further analysis under § 1692e(10) is 'somewhat duplicative.'" *Chulsky v. Hudson Law Offices, P.C.*, 777 F. Supp. 2d 823, 831–32 (D.N.J. 2011) (quoting *Gervais v. Riddle & Associates, P.C.*, 479 F. Supp. 2d 270, 276–77 (D. Conn. 2007)). Likewise, the viability of claims under Section 1692e's subsections implies that a direct claim under Section 1692e itself (claim a) has been stated.

Therefore, Youderian's motion to dismiss will also be denied with respect to claims a, b, c, and e, under Section 1692e and subsections e(2) and (e)(10).[24]

### ii.    § 1692e(5) (claim d)

It is clear, however, that Thomas fails to state a claim under subsection 1692e(5) (claim d). The Letter is a solicitation to pay, or perhaps an offer to settle, Thomas's debt. Even the least sophisticated debtor would not plausibly read it as a threat to take any action. More to the point, the amended complaint does not allege that Youderian threatened Thomas with any action, such as the filing of a lawsuit. *See Kaymark*, 783 F.3d at 176; *Skinner v. Asset Acceptance, LLC*, 876 F. Supp. 2d 473, 478–79 (D.N.J. 2012).

Therefore, Youderian's motion to dismiss will be granted as to claim (d), under subsection 1692e(5).

---

[24]    Here, as under Section 1692f, claims under the general prohibition of 1692e might be seen as duplicative of claims under its more specific subsections. Nevertheless, courts have recognized 1692e and subsection claims separately. *See, e.g. Clomon v. Jackson*, 988 F.2d 1314, 1320 (2d Cir. 1993) ("We note that the record also establishes a violation of subsection (10) and of the general ban in § 1692e."); *Bock v. Pressler & Pressler, LLP*, 30 F. Supp. 3d 283, 305 (D.N.J. 2014), as corrected (July 1, 2014), as corrected (July 7, 2014) (holding that the plaintiff "violated the general prohibitions of 15 U.S.C. § 1692e, as well as subsections (3) and (9) in particular."). Particularly at this early stage, I will not dismiss a claim merely because it may be redundant.

### d. § 1692g(a)(1) (claim h)

Finally, in claim h of the amended complaint, Thomas asserts that Youderian's Letter violated FDCPA subsection 1692g(a)(1), which provides: "Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing— (1) the amount of the debt." 15 U.S.C. § 1692g(a)(1). [25] Youderian makes no argument specific to this claim. Nevertheless, because the pleading is insufficient on its face, I will grant his motion to dismiss claim (h).

First, the Letter cannot be the follow-up communication within five days that is required by 1692g. The amended complaint alleges that "[t]he Letter [was] the *first* written communication" from Youderian to Thomas regarding the debt. (AC ¶ 26 (emphasis added)). There is not an allegation of a prior communication that would have set the five-day clock running. Assuming *arguendo* that the Letter is a communication covered by 1692g, it is facially compliant. The letter plainly states the amount of Thomas's debt: $327.80. Even assuming that the $3.00 Convenience Fee is part of the debt, the Letter discloses that as well. And the arithmetic required to combine the two figures is not confusing or beyond the scope of even an unsophisticated reader. *See generally Dibattista v. Buckalew, Frizell & Crevina, LLP*, 574 F. App'x 107, 111 (3d Cir. 2014) (affirming dismissal of Section 1692g(a)(1) claim based on language reporting debt owed in two separate sums because "it is not unreasonable to expect even the least sophisticated debtor to be able to perform the simple addition of two sums . . . , and [plaintiff's] argument

---

[25]   A small number of courts have read the materiality requirement into Section 1692g claims. *See, e.g., Abramov v. I.C. Sys., Inc.*, 54 F. Supp. 3d 270, 278 (E.D.N.Y. 2014); *Miranda v. Praxis Fin. Sols., Inc.*, No. 13-CV-0931-WJM-MWJ, 2014 WL 5504745, at *2 (D. Colo. Oct. 31, 2014). Recent authority in this district, however, has confined that requirement to Section 1692e only. *See Cohen v. Dynamic Recovery Sols.*, No. 16-576, 2016 WL 4035433, at *5 (D.N.J. July 26, 2016). Absent any contrary guidance from the Third Circuit, I will do so as well.

consist[ed] of nothing more than repeating the language of § 1692g(a)(1) while asserting, without support, that the Letter violates the section."); *Smith v. Lyons, Doughty & Veldhuius, P.C.*, No. CIV.A. 07-5139, 2008 WL 2885887, *6 (D.N.J. July 23, 2008) (where debt collection letter did not indicate the date on which interest was calculated or disclose that interest would continue to accrue, plaintiff stated claim under Section 1692g(a)(1) because such "omissions could confuse the leas[t] sophisticated debtor.").

I find that the amended complaint fails to state a claim under Section 1692g(a)(1) and therefore, I will grant Youderian's motion to dismiss as to claim h.

### Conclusion

For the reasons expressed above, the Defendants' motion to dismiss (ECF no. 12) is granted as to Thomas's claims under FDCPA Sections 1692e(5) and 1692g(a)(1) (claims d and h) and denied as to Thomas's claims under FDCPA Sections 1692e, 1692e(2), 1692e(10), 1692f, and 1692f(1) (claims a–c and e–g). This dismissal is without prejudice to the plaintiffs' filing within 30 days of a proposed second amended complaint. A separate order will issue.

Dated: February 3, 2017

KEVIN MCNULTY
United States District Judge